## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RANDLE RAYMOND LOCKETT,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-CV-0046-GKF-JFJ** |
| | ) | |
| **JANET DOWLING, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

This matter is before the Court on Petitioner Randle Raymond Lockett's Amended 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus (Dkt. 10).[1] Lockett is a state inmate appearing pro se. Having considered Lockett's Petition, Respondent Janet Dowling's Response to Amended Petition for Writ of Habeas Corpus (Dkt. 12), and Lockett's Reply to the Attorney General's Response (Dkt. 17), records from state court proceedings (Dkts. 13, 14), and applicable law, the Court concludes that Lockett is not entitled to federal habeas relief. The Court therefore denies the Petition.

## BACKGROUND

The State of Oklahoma charged Lockett in Tulsa County District Court, Case No. CF-2013-4823, with one count of first-degree murder and one count of possession of a firearm after felony conviction (Dkt. 13-8 at 10). Lockett's case proceeded to jury trial. *Id.* The jury found Lockett guilty on both counts, and the trial court sentenced him on March 30, 2015. *Id.*

> At trial, the State presented evidence that the Petitioner shot and killed Charles Johnson over an argument about drug payments and a necklace. Sheila Gilstrap testified that the day before the shooting, herself, Petitioner, and some other people were partying and using drugs and alcohol at her apartment. (Tr. Vol. II, pp. 279-282). Charles Johnson ("CJ"), the victim, came over to the apartment at

---

[1] Because Lockett filed an amended petition, the Court declares moot his original petition (Dkt. 1).

some point in the night, and Petitioner bought $100 worth of crack cocaine from him. (Tr. Vol. II, p. 282, lines 14-23). Once the drugs had been used up, CJ was called back to the apartment, and the Petitioner exchanged a necklace for about $50 worth of drugs as a "pawn." (Tr. Vol. II, pp. 284-287). The next day, Petitioner returned to Ms. Gilstrap's apartment and asked her to call CJ for him, or called CJ himself. (Tr. Vol. II, p. 291, lines 10-23). Ms. Gilstrap called CJ, informing him that Petitioner wanted his necklace back and that he wanted to buy $100 worth of "stuff." (Tr. Vol. II, p. 292, lines 2-25). Petitioner was waiting in the car with his wife when CJ arrived at Ms. Gilstrap's apartment. (Tr. Vol. II, pp. 295-296, lines 22-25). Petitioner then ran up the stairs to the apartment, where CJ was, hit CJ in the head with a pistol, and then shot at him multiple times, including as he was running away. (Tr. Vol. II, pp. 298-302). It was uncontested at trial that CJ died due to a bullet wound to the chest.

*State v. Lockett*, CF-2013-4823, Tulsa County (Okla. May 16, 2018) (Dkt. 12-6 at 8-9).[2]

Lockett raises five claims for relief in his Petition:

1. The State failed to establish the charged offense beyond a reasonable doubt (i.e., a sufficiency of the evidence claim);

2. The Tulsa Police Department failed to secure or preserve evidence from Ms. Gilstrap's apartment, constituting police misconduct;

3. The Tulsa Police Department failed to submit the victim's shirt to the medical examiner's office for gunpowder residue testing, constituting police misconduct;

4. Prosecutorial misconduct violated Lockett's Due Process Rights; and

5. Ineffective assistance of trial counsel for failing to raise grounds 2 & 3 at trial or present the evidence thereof, and ineffective assistance of appellate counsel for failing to raise grounds 1-4 on appeal.

(Dkt. 10).

Before pursing the instant habeas petition, Locket directly appealed his conviction to the

Oklahoma Court of Criminal Appeals (OCCA) raising four propositions:

1. First, prosecutorial misconduct infected his trial in violation of his Fourteenth Amendment rights.

2. Second, that a letter was admitted in violation of the Oklahoma Evidence Code.

---

[2] Dkt. 13-5 is identified by the trial court as Tr. Vol. II.

3. Third, he received ineffective assistance of trial counsel.

4. And fourth, that an accumulation of errors denied him a fair trial.

(Dkt. 12-1). The OCCA rejected Lockett's claims in a summary opinion on November 4, 2016. (Dkt. 12-3).

Subsequently, Lockett filed an application for post-conviction relief on October 26, 2017, raising two claims (Dkt. 12-4). First, Lockett alleged that the evidence presented was insufficient to establish first-degree murder. *Id*. at 6. Second, Lockett alleged police misconduct prevented exculpatory evidence from being discovered. *Id*. at 10. The trial court denied Lockett's application on May 16, 2018, and the OCCA affirmed on January 7, 2019. (Dkts. 12-6, 12-8). Lockett filed a second application for post-conviction relief on January 28, 2019, claiming that "newly discovered evidence" had arisen that showed the investigating officer in his case had acted improperly in another case (Dkt. 12-9). The trial court denied Lockett's second post-conviction application on May 19, 2022, and the OCCA declined jurisdiction on appeal because the Petition in Error was untimely (Dkt. 12-12 at 2).

## DISCUSSION

Because Lockett is a state prisoner, the Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of his claims. Under the AEDPA, a federal court may grant habeas relief to a state prisoner "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In addition, before a federal court may grant habeas relief, the state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim[s] to state courts," *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002). And, in most cases, the prisoner must file a federal habeas petition within one year of the date on which his

convictions became final. *See* 28 U.S.C. § 2244(d)(1).  Respondent concedes, and the Court finds, that Lockett has timely filed his habeas action.  Respondent contends that Lockett's claims are exhausted but urges the Court must review several of the grounds under an ineffective assistance of counsel analysis.

Under § 2254(d), the AEDPA limits the ability of a federal court to grant habeas relief when a state prisoner's federal claims were "adjudicated on the merits in State court proceedings." With respect to such claims, a federal court may not grant habeas relief unless the prisoner first demonstrates that the state court's adjudication of those claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, 28 U.S.C. § 2254(d)(2).

Before the Court turns to the merits of Lockett's Petition, the Court must first decide what issues have been raised.[3]  Lockett did not raise grounds 1-3 on direct appeal but did raise these claims through his post-conviction proceedings.  Because Lockett did not raise ground 1-3 on direct appeal, these claims were either (1) subject to being procedurally barred in his post-conviction proceedings, or (2) being cast as ineffective assistance of appellate counsel claims. *Berget v. State*, 907 P.2d 1078, 1080–81 ("Issues which were raised on direct appeal are barred from further consideration by *res judicata*, and issues which were not raised on direct appeal, but could have been, are waived."); *see also* 22 Okla. Stat. tit 22, §1086.  The OCCA reviewed these post-conviction claims under the umbrella of ineffective assistance of appellate counsel (Dkt. 12-8 at 5-8).  This Court, in liberally construing Lockett's petition to reach the merits, will review

---

[3] Because Lockett appears pro se, the Court liberally construes his pleadings. *Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009).

claims 1-3 as brought under the umbrella of his fifth ground – ineffective assistance of trial and appellate counsel. *Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009). The Court will review Lockett's fourth claim – prosecutorial misconduct – directly, because his appellate counsel brought this claim on direct appeal (Dkt. 12-1 at 8). Finally, Lockett's fifth claim – ineffective assistance of trial and appellate counsel – will be considered with grounds 1-3.

## I.    INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim of ineffective assistance of counsel, a prisoner has the burden of showing his counsel was deficient and that such deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). A reviewing court's "scrutiny of counsel's performance must be highly deferential," and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Even if counsel's performance is shown to be unreasonable under this deferential standard, Strickland requires the defendant to show prejudice, i.e., to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.

The state court must view counsel's performance with the "strong presumption" that that counsel's performance was reasonable "under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. Standing alone, this standard is "highly deferential." *Id.* at 689. Section 2254(d)(1) adds a second layer of deference. When a federal habeas court reviews a state court's decision on a *Strickland* claim, the habeas court must grant the state court "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The only question for the habeas court is whether the state

5

court had a reasonable basis for rejecting the *Strickland* claim.  *Id.*  And "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial."  *Id.* at 105.

### A.  Lockett's sufficiency of the evidence claim

In Lockett's first proposition, Lockett contends "The Oklahoma Court of Criminal Appeal [sic] rendered an unreasonable decision in denying Petitioner's claim that the State failed to establish the charged offenses beyond a reasonable doubt as required by the Fifth Amendment to the U.S. Constitution, requiring reversal under Rule 2254" (Dkt.10 at 3).  Lockett contends the victim's shirt should have been tested by police for gunpowder residue, and that if it had been tested, it would have indicated the victim was shot at a close range.  *Id*. at 5.  Lockett also contends the altercation began in the apartment, and if the police had properly collected evidence from the apartment, the evidence would have shown the altercation began in the apartment and supported his claim of self-defense.  *Id*. at 6-8.  Lockett contends these two failures prevented him from fully presenting his claim of self-defense.  Finally, Lockett contends that because a witness testified that he was not pointing the gun at anyone for some of the shots and because the medical examiner's testimony showed the victim was shot in the chest, he lacked malice aforethought to commit first-degree murder.  *Id*. at 7-8.

The OCCA reviewed Lockett's ineffective assistance of counsel for failure to raise a sufficiency of the evidence claim.  The trial court found:

> Petitioner's primary claim is that the State failed to prove that Petitioner's killing of the victim was unlawful, and that Petitioner had the requisite state of mind to kill the victim.  "When the sufficiency of the evidence presented at trial is challenged on appeal, the proper test is whether a prima facie case has been established."  *Mehdipour v. State*, 1982 OK CR 199, ¶ 10, 655 P.2d 560, 562.  If that test is satisfied, then "all questions of fact are for the jury to resolve."  *Id*.  In conducting this test, the evidence is viewed in the light most favorable to the State.  *Id*. (*citing Renfro v. State*, 607 P.2d 703 (Okl. Cr. 1980)).

> * * *

"Self-defense is an affirmative defense which admits the elements of the charge, but offers a legal justification for conduct which would otherwise be criminal." 21 O.S. § 733; *McHam v. State*, 2005 OK CR 28, ¶ 10, 126 P.3d 662, 667 (*citing West v. State*, 1990 OK CR 61, ¶ 6, 798 P.2d 1083, 1085). When Petitioner claimed self-defense at trial, he necessarily conceded that there was a prima facie case of First Degree Murder, and accordingly that there was sufficient evidence to establish that prima facie case. Furthermore, the State's evidence as restated above is clearly sufficient to establish a prima facie case of First Degree Murder. Petitioner's reliance on his own testimony, and his own interpretation of the evidence cannot negate the State's evidence given the requirement that [] it be viewed in the light most favorable to the State. *Mehdipour*, 1982 OK CR 199, ¶ 10, 655 P.2d at 562. Because the test of whether a prima facie case was established has been met, all other questions of fact were for the jury to resolve. *Id*. Therefore, Petitioner's claim that there was insufficient evidence to support the conviction is meritless, and his appellate counsel cannot have been ineffective for failing to raise this issue on direct appeal. *Logan*, 2013 OK CR 2, ¶ 5, 293 P.3d at 973.

*State v. Lockett*, CF-2013-4823, Tulsa County (Okla. May 16, 2018) (Dkt. 12-5 at 8-10). The OCCA affirmed these findings on appeal. *State v. Lockett*, PC-2018-620, Okla. Crim. App. (Okla. Jan. 7, 2019) (Dkt. 12-8 at 6-8).

Under the Due Process Clause of the Fourteenth Amendment, a criminal defendant cannot be convicted of a crime unless the state proves, beyond a reasonable doubt, every essential element of the crime charged. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). The criminal defendant "is entitled to habeas corpus relief if it is found that upon the record evidence *adduced at the trial* no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324 (emphasis added).

On federal habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*). As the Supreme Court explained:

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Ibid.* (*quoting Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Id.* To determine whether there was sufficient evidence presented at trial to sustain Lockett's conviction, the Court first must look to Oklahoma law for the elements required for the crime. *Jackson*, 443 U.S. at 324, n. 16; *see also Torres v. Mullin*, 317 F.3d 1145, 1152 (10th Cir.), *cert. denied*, 540 U.S. 1035 (2003). The relevant statute, Okla. Stat. tit. §701.7(A)(2011), provides:

> [a] person commits murder in the first degree when he unlawfully and with malice aforethought causes the death of another human being. Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof.

*See* Okla. Stat. tit. 21, § 702 (2011).

The record supports the trial court's factual findings above. The State presented evidence at trial establishing that on September 20, 2013, Lockett was at Sheila Gilstrap's apartment (Dkt. 13-7 at 73). While there, Lockett met with Charles Johnson to purchase $100 worth of crack cocaine (Dkt. 13-7 at 77-78). After using his drugs, Lockett inquired about purchasing more from Johnson (Dkt. 13-5 at 286). Lockett agreed to pawn his necklace in exchange for $50 worth of drugs. *Id*. The next day, Lockett attempted to contact Johnson about his necklace, but Johnson would not return Lockett's phone calls (Dkt. 13-5 at 291). Lockett then returned to Gilstrap's apartment, and asked Gilstrap to call Johnson. *Id*. Lockett told Gilstrap he wanted to buy drugs from Johnson, but that his real goal was to have his necklace returned (Dkt. 13-5 at 291-292). Johnson came to Gilstrap's apartment per her request, but when he arrived, Lockett ran up the

stairs, hit Johnson over the head with the gun, and then fired at Johnson as he ran away (Dkt. 13-5 at 293-304). Johnson was shot once and died of a gunshot wound (Dkt. 13-7 at 29-34).

After careful review of the record, the Court finds the evidence was sufficient under *Jackson v. Virginia*. Because sufficient evidence was adduced at trial to support the OCCA's findings, the Court finds the OCCA's conclusion is not "an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. §2254(d)(2). The OCCA applied the correct standard – i.e., *Strickland* and *Jackson* – and did not apply it unreasonably. 28 U.S.C. §2254(d)(1). Moreover, the Court only considers the evidence adduced at trial when reviewing a sufficiency of the evidence claim. *See Jackson*, 443 U.S. at 324 (emphasis added) (The criminal defendant "is entitled to habeas corpus relief if it is found that upon the record evidence **adduced at the trial** no rational trier of fact could have found proof of guilt beyond a reasonable doubt."). The Court addresses issues of the victim's shirt and Ms. Gilstrap's apartment later in this order, but does not consider this evidence in its analysis of Lockett's sufficiency of the evidence claim. *See Jackson*, 443 U.S. at 324

Because the OCCA's conclusion that Lockett's sufficiency of the evidence claim was meritless was not unreasonable, the Court also finds the OCCA's conclusion to be a reasonable application under *Strickland*. 28 U.S.C. §2254(d). Furthermore, Lockett has made no showing that had his trial or appellate counsel raised a sufficiency of the evidence claim, there was a reasonable probability the result of his proceedings would have been different. *Strickland*, 466 U.S. at 694.

Based on the foregoing, the Court finds that Lockett's claims for ineffective assistance of appellate counsel related to a sufficiency of the evidence claim are denied.

**B. Lockett's claim of police misconduct for failing to secure exculpatory evidence from Ms. Gilstrap's apartment**

Lockett next contends the police committed misconduct by failing to secure Ms. Gilstrap's apartment and collect evidence from the same. Lockett argues that the altercation between him and Johnson began in the apartment, and had the police secured the apartment and collected evidence, such evidence would have supported his claim of self-defense.

The OCCA reviewed Lockett's claim, and held:

> The State has a duty under the Due Process Clause of the Fourteenth Amendment to preserve evidence that might be expected to play a significant role in the suspect's defense. Such evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." . . . . "[U]nless a defendant can show bad faith by the police, destruction of potentially useful evidence does not constitute a due process violation." *Cuesta-Rodriguez v. State*, 2010 OK CR 23, ¶ 20, 241 P.3d 214, 225 (citations omitted).

> Because Petitioner has not shown on this record that any of the circumstances described in *Cuesta-Rodriguez* surrounded the evidence he alleges might have been found within the apartment, his claim of police misconduct is unfounded. Petitioner therefore does not show his appellate counsel was ineffective in not raising a claim of police misconduct in Petitioner's direct appeal.

*State v. Lockett*, PC-2018-620, Okla. Crim. App. (Okla. Jan. 7, 2019)) (Dkt. 12-8 at 9-10).

While a State has a duty to collect and preserve evidence, "that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U.S. 479, 488–89 (1984) (internal citations omitted). Moreover, even if exculpatory evidence was destroyed, if the evidence was destroyed in good faith – i.e., through

normal practices – Lockett would not be deprived of "any right." *Killian v. United States*, 368 U.S. 231, 242 (1961) (finding that the destruction of FBI notes, which likely contained exculpatory evidence, "did not constitute an impermissible destruction of evidence nor deprive petitioner of any right" because "they were destroyed by the agents in good faith and in accord with their normal practices.").

In Lockett's case, the trial court found, based on testimony from the first officer on the scene, that Ms. Gilstrap's apartment appeared "clean, [and] put together.  It didn't appear that anything was disturbed.  The only thing [the officer] noticed was a couch cushion was pulled out and kind of cockeyed.  Everything else was pushed back." (Dkt. 6 at 11-12) (citing to Dkt. 13-5 at 249).  The officer further testified that there was no appearance of a struggle in the apartment, no large dents or holes in the walls, no green vase, no broken vase, and nothing of note on the floor. *Id*. at 249-50.  Because Lockett failed to show that any evidence within the apartment was exculpatory or that the evidence was destroyed in bad faith, the OCCA concluded that his claim of police misconduct was unfounded.  *State v. Lockett*, PC-2018-620, Okla. Crim. App. (Okla. Jan. 7, 2019)) (Dkt. 12-8 at 10).

The Court finds that the OCCA applied the correct standard in its review.  Although the OCCA cites its own decision in *Cuesta-Rodrigues*, that decision applies the federal standard set forth in *Trombetta*.  *Cuesta-Rodriguez v. State*, 241 P.3d 214, 225 (2010).  Further, the OCCA's decision was not "an unreasonable determination of the facts in light of the evidence presented in the State court proceedings" because its findings are supported by the record.  28 U.S.C. §2254(d)(2).  Thus, the OCCA's conclusion that "his claim of police misconduct [related to evidence within Ms. Gilstrap's apartment] are unfounded" (Dkt. 12-8 at 10) is not "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1).

Because the OCCA's determination on the underlying claim was not unreasonable, the Court finds the OCCA's conclusion that Lockett's appellate counsel was not deficient is not an unreasonable application of *Strickland*. 28 U.S.C. §2254(d). Furthermore, Lockett has made no showing that had his appellate counsel raised the claim of police misconduct related to evidence within Ms. Gilstrap's apartment, there was a reasonable probability the result of his proceedings would have been different. *Strickland*, 466 U.S. at 694.

Based on the foregoing, the Court finds that Lockett's claims for ineffective assistance of appellate counsel related to police misconduct for failing to secure evidence within Ms. Gilstrap's apartment are denied.

### C. Lockett's claim of police misconduct for failing to test the victim's shirt for gunpowder residue

Lockett's third claim is that the police committed misconduct by failing to submit the victim's shirt to the medical examiner for a gunpowder residue test (Dkt. 10 at 12). Lockett argues that had the victim's shirt been tested for gunpowder residue, the results would show the victim was shot at a close distance. *Id*. Lockett believes these results would support his theory the victim was shot during an altercation, and thus his claim of self-defense. *Id*. Lockett also contends his trial counsel was ineffective for failing to present this evidence in support of his defense. *Id*. at 15.

The OCCA reviewed Lockett's claim as an ineffective assistance of counsel claim and held:

> The District Court also rejected Petitioner's claim that testing of gunpowder residue would have established his self-defense claim. Here it found no proof of prejudice, because "Petitioner fails to show that even if the Medical Examiner had

been provided with the clothes, that he would have been able to form an opinion as to how close the Petitioner was to CJ when he shot him." Based on the foregoing findings addressing each of Petitioner's Claim III assertions, the District Court concluded Petitioner had not shown his appellate counsel was ineffective for not raising the alleged police misconduct claims in the direct appeal.

In this appeal of the District Court's order, Petitioner renews his assertion that the failure to test the clothes for gunpowder residue deprived him of evidence supporting his theory of self-defense. He also renews his claim that the police improperly withheld Johnson's clothes from the Medical Examiner in order to prevent the testing. Again, Petitioner speculates that testing would have yielded a result beneficial to his defense. Such speculation, however, does not meet Petitioner's burden to show that he suffered prejudice from his counsel's alleged deficient performance.

This Court has held that for a post-conviction applicant "[t]o successfully prove ineffective assistance of counsel, [the applicant] must satisfy the two-prong test enunciated in Strickland." *Clayton v. State*, 1995 OK CR 3, ¶ 18, 892 P.2d 646, 654-55. This two-prong test requires the post-conviction claimant to "show that his attorneys' performance was deficient and that such deficient performance prejudiced him." *Hooks v. State*, 1995 OK CR 56, ¶ 5, 902 P.2d 1120, 1123. "[T]he burden is on the defendant to demonstrate both deficient performance and resulting prejudice." *Carter v. State*, 1997 OK CR 22, ¶ 10, 936 P.2d 342, 346. A post-conviction applicant cannot meet that burden through mere speculation. Instead, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 46 U.S. at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

*State v. Lockett*, PC-2018-620, Okla. Crim. App. (Okla. Jan. 7, 2019)) (Dkt. 12-8 at 5-6).

The Court finds sufficient evidence within the record to support the OCCA's factual findings. Specifically, Lockett has presented no evidence that supports his claim that the medical examiner could have determined the distance at which Lockett shot Johnson "with scientific accuracy." Rather, Lockett cites to *Dunkle v. State*, 139 P.3d 228, 235, wherein a medical examiner testified that "[**b]ased upon the stippling around the entrance wound**, . . . the bullet was fired from an intermediate distance, which he described as a range from several millimeters up to three or four feet." (emphasis added). In Lockett's case, there is no evidence of stippling. The medical examiner did not testify to any stippling (Dkt. 13-7 at 16-52), the medical examiner's

report did not note any stippling (Dkt. 13-17 at 9-12), and Lockett presents no evidence of stippling.  Because the prerequisite in *Dunkle* (i.e., stippling) to determine distance does not exist, it is mere speculation to assert that the medical examiner could determine distance "with scientific accuracy."

Moreover, the OCCA's conclusion that Lockett failed to show prejudice is not unreasonable.  Even if the medical examiner had determined distance, Lockett has not shown that there is a reasonable probability the result of the test would have been favorable to him, or that the outcome of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.  While the distance of the shot may possess some evidentiary value, it is not unreasonable to conclude the outcome of the proceeding would have been the same.  As the Supreme Court held in *Richter*, "the likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at 112. Here, Lockett's claim of a different outcome is merely conceivable at best.

Based on the record, the Court finds the OCCA's holding – that a determination of distance could be determined by a gunpowder residue test is speculation – was not "an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  28 U.S.C. §2254(d)(2).  The OCCA also applied the correct standard – i.e., *Strickland* – and did not apply it unreasonably.  28 U.S.C. §2254(d)(1).  Furthermore, Lockett has made no showing that had his trial or appellate counsel raised a claim for police misconduct or tested the victim's shirt for gunpowder residue, there was a reasonable probability the result of his proceedings would have been different.  *Strickland*, 466 U.S. at 694.

Based on the foregoing, the Court finds that Lockett's claim for ineffective assistance of trial and appellate counsel related to police misconduct for failing to perform a gunpowder residue test on the victim's shirt is denied.

II.     **PROSECUTORIAL MISCONDUCT AT TRIAL**

In Lockett's final proposition, he contends prosecutorial misconduct invaded his trial, such that his due process rights to a fair trial were violated.  Specifically, Lockett contends the prosecutors (A) used improper hypotheticals during voir dire, (B) made statements to the jury that they should not settle on a lesser charge for the victim's sake, (C) interjected their own personal opinion by calling Lockett a liar, (D) suggested other witnesses were available but didn't testify, and (E) improperly used a jigsaw puzzle analogy (Dkt. 10 at 13-14).  Lockett also contends his trial counsel was ineffective for failing to raise objections to these instances of prosecutorial misconduct (Dkt. 10 at 15).  Respondent answers that none of the incidents constituted prosecutorial misconduct, or if so, they did not infect Lockett's trial with such unfairness that he was denied due process (Dkt. 12 at 47).

"Generally, a prosecutor's improper remarks require reversal of a state conviction only if the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 645, (1974)).  "Alternatively, if the alleged prosecutorial misconduct denied the petitioner a specific constitutional right (rather than the general due process right to a fair trial) a valid habeas corpus claim may be established without proof that the entire trial was rendered fundamentally unfair." *Id*.  In the instant case, Lockett has raised the issue of prosecutorial misconduct under the Due Process Clause of the Fourteenth Amendment, rather than under a specific constitutional right (Dkt. 10 at 13).  As such, this Court reviews the claims for fundamental fairness.

To evaluate fundamental fairness, a court must examine the entire proceeding.  *Le*, 311 F.3d 1013.  This includes the strength of the evidence presented, any cautionary steps – i.e.,

instruction to the jury – offered by the court to counteract improper remarks, and counsel's failure to object to the comments.[4]  *Id.*  "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned. Ultimately, this court considers the jury's ability to judge the evidence fairly in light of the prosecutor's conduct.  *Id.* (internal citations and quotation omitted).

The OCCA reviewed Lockett's claims of prosecutorial misconduct for "plain error" (Dkt. 12-3 at 3).  The Tenth Circuit has held Oklahoma's plain error test is rooted in due process, and its "plain error" analysis has no practical distinction from this Court's federal due-process test. *Thornburg v. Mullin*, 422 F.3d 1113, 1124-25 (10th Cir. 2005).  As such, "[b]ecause the OCCA applie[s] the same test we apply to determine whether there has been a due-process violation, we must defer to its ruling unless it "unreasonably appli[ed]" that test."  *Id.* at 1125 (citing 28 U.S.C. §2254(d)).  Thus, this Court will review the OCCA's conclusions for each instance of prosecutorial misconduct to determine whether the OCCA's rulings were unreasonable.

### A.  Voir Dire Hypotheticals

Lockett claims the prosecutor used improper hypotheticals in voir dire to determine how the jury would vote based on the facts of his case (Dkt. 12-1 at 10; Dkt. 10 at 13).  Lockett points to three hypotheticals.

First, the prosecutor put forth a hypothetical about a man who comes home to finds his wife in bed with another man (Dkts. 12-1 at 9-13; 13-5 at 79-80).  The prosecution then asked questions from this hypothetical and made various changes to the hypothetical, to demonstrate the difference between manslaughter and murder.  *Id.*  Second, the prosecutor extracted promises from the jury that if he left out certain details, but still met the elements, that jury would still convict

---

[4] "Counsel's failure to object to the comments, while not dispositive, is also relevant to a fundamental fairness assessment." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (*citing to Trice v. Ward,* 196 F.3d 1151, 1167 (10th Cir.1999)).

(Dkts. 12-1 at 12; 13-5 at 142).   And third, the prosecutor claimed the victim was a "bad guy",

which was highly prejudicial (Dkts. 12-1 at 12-13; 13-5 at 103).   Because of Lockett and Johnson's

relationship as drug dealer and addict, Lockett contends "Johnson's character [was] inexorably

intertwined with [Lockett's] actions." (Dkts. 12-1 at 12-13; 13-5 at 103).

 The OCCA reviewed these instances, and first noted that Lockett failed to object to the

various instances during trial (Dkt. 12-3 at 2-5).   The OCCA then held

> [Lockett] fails to show plain error from the prosecutor's voir dire
> questioning of the prospective jurors.   The prosecutor's voir dire questions
> concerning finding another man in bed with one's wife was an effort to demonstrate
> the difference between first degree malice aforethought murder and first degree heat
> of passion manslaughter.   This exchange with the panelists was not an effort to get
> them to commit to any particular verdict based upon hypothetical facts which
> parallel those expected to be presented at trial.   See Rule 6, Rules for District Courts
> of Oklahoma, Title 12, Ch.2, App. (2015); *Thompson v. State*, 2007 OK CR 38, ¶
> 33, 169 P.3d 1198, 1209.   Indeed, [Petitioner] admits the facts of the prosecutor's
> hypothetical do not parallel the facts expected to be presented at trial. Under the
> total circumstances, there was no plain or obvious error arising from this exchange
> which affected [Petitioner's] substantial rights.   *See Jackson v. State*, 1998 OK CR
> 39, ¶ 22, 964 P.2d 875, 885; *Byrne v. State*, 1971 OK CR 100, ¶ 3, 482 P.2d 620,
> 621.
>
> The balance of challenged voir dire questions were an attempt by the
> prosecutor to determine potential biases by the panelists based on issues which
> would arise in the case.   This was permissible. *Robinson v. State*, 2011 OK CR 15,
> ¶ 16, 255 P.3d 425, 431-32. Jurors are presumed to follow their instructions,
> *Blueford v. Arkansas*, _U.S. _, 132 S. Ct. 2044, 2051, 182 L. Ed. 2d 937 (2012),
> and [Petitioner] fails to overcome that presumption here.   The prosecutor's voir dire
> questions did not contradict the instructions given by the trial court concerning the
> burden of proof or the factors which jurors may consider in evaluating the weight
> and credibility of testimony.   Under the total circumstances, the record does not
> reveal plain or obvious error which affected [Petitioner's] substantial rights. *See
> Dodd v. State*, 2004 OK CR 31, ¶ 24, 100 P.3d 1017, 1029. Thus, there is no plain
> error and relief is unwarranted for this aspect of his claim.

*State v. Lockett*, F-2015-341, Okla. Crim. App. (Okla. Nov. 4, 2016) (Dkt. 12-3 at 3-4).

 As noted above, defense counsel did not object to the hypotheticals raised (Dkt. 13-5 at 22-

154).   While not dispositive, it is one factor in support of the OCCA's conclusion, because it

indicates fundamental fairness seen at the trial court level.   *Le v. Mullin*, 311 F.3d 1002, 1013

(10th Cir. 2002) (*citing to Trice v. Ward,* 196 F.3d 1151, 1167 (10th Cir.1999).  The Court next notes the evidence against Lockett is strong.  As stated above, Lockett does not contest that he is the one who shot Johnson, but rather that it was justified.  The parties agree the dispute arose over a necklace, and an eyewitness testified that Lockett ran up the stairs and attacked Johnson to retrieve his necklace that had been pawned for drugs.  After the shooting, Lockett testified he did not contact the police, but rather went home and took a nap (Dkt. 13-7 at 116).  This factor also that supports the OCCA's conclusion.  Finally, the jury was provided jury instructions, for the lesser offense of Manslaughter in the First Degree – Heat of Passion, Self-Defense, and reasonable doubt (Dkt. 13-10 at 3-57).  The trial court's proper instructions on the elements of Murder, as well as Manslaughter in the First Degree, mitigate any error resulting from the prosecutor's hypotheticals.

Based on the entire record, the Court finds ample support in the record to support the OCCA's conclusion that Lockett failed to show plain error for questions presented during voir dire (Dkt. 12-3 at 3).  Because the OCCA's conclusion was not "contrary to, [nor] involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States", the Court finds that the OCCA did not "unreasonably appl[y]" its plain error standard that is rooted in due process.  28 U.S.C. § 2254(d); *Thornburg*, 422 F.3d at 1124-25 (10th Cir. 2005).  As such, "[b]ecause the OCCA applie[s] the same test we apply to determine whether there has been a due-process violation, we must defer to its ruling unless it "unreasonably appli[ed]" that test."  *Id.* at 1125 (citing to 28 U.S.C. § 2254(d)).

Based on the foregoing, Lockett's claim of prosecutorial misconduct for voir dire hypotheticals is denied.

**B.  Statements by the Prosecutor**

Lockett's next claim of prosecutorial misconduct relates to statements made during closing argument (Dkt. 10 at 13-14).  Lockett points to three instances.  First, he alleges that the prosecutor was acting on behalf of the victims.  Lockett points to the state's closing argument, wherein the prosecutor began by thanking the jury "on behalf of Mr. Johnson's family and the State of Oklahoma" (Dkt. 12-1 at 13; Dkt. 13-7 at 220).  Lockett also complains about the prosecutor's asking the jury "[d]on't settle for Mr. Johnson's sake", asking the jury to "[s]how Charles justice", and stating ". . . Mr. Johnson's family will never get to see him.  Punish Mr. Lockett."  (Dkt. 13-7 at 232).

Second, he alleges that the prosecutor improperly called Lockett a liar (Dkt. 13-7 at 234-35) ("the defendant is the only person that has been shown to be a liar by the instructions"; "I'm suggesting to you that the defendant is lying"; "I think the defendant is the liar and Instruction No. 18 will tell you that he's the one that's inconsistent.").  And third, he alleges that the prosecutor improperly implied other witnesses were available, but they did not testify (Dkt. 10 at 13-14; Dkt. 13-5 at 119) (". . . I can't tell you, oh, by the way, Judge, so and so is refusing to testify.  Here's what he would have said.  You're not going to get to hear that.  You'll just hear a blank.  Will you promise not to hold that blank or missing piece against me, assuming obviously, that I prove my case beyond a reasonable doubt?").

The OCCA reviewed these claims and held:

> [Lockett's] challenge to various comments made by the prosecutor during closing argument also does not warrant relief.  Both parties have wide latitude in closing argument to argue the evidence and reasonable inferences from it.  We will not grant relief for improper argument unless, viewed in the context of the whole trial, the statements rendered the trial fundamentally unfair, so that the jury's verdicts are unreliable.  *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986); *Bosse v. State*, 2015 OK CR 14, ¶ 75, 360 P.3d 1203, 1232, *rev'd on other grounds, Bosse v. Oklahoma*, No. 15-9173, slip op. (U.S. Oct.

10, 2016). [Petitioner] timely objected to only one instance of prosecutorial misconduct now alleged, thus preserving it for appellate review.  The balance of alleged instances of prosecutorial misconduct, however, drew no objection from [Petitioner] thus waiving on appeal all but plain error. *Id*.

In the one instance where [Petitioner] raised a contemporaneous objection, the trial court sustained the objection and the prosecutor subsequently withdrew the statement.  This cured any error.  *Johnson v. State*, 2013 OK CR 12, ¶ 15, 308 P.3d 1053, 1057; *Sweet v. State*, 1940 OK CR 142, 70 Okl. Cr. 443, 451, 107 P.2d 817, 822.  Additionally, [Petitioner] fails to show that the balance of challenged comments (which, again, drew no contemporaneous objection) amounted to fundamentally unfair tactics or argument by the prosecutor.  The prosecutor erred when he thanked the jury during closing argument on behalf of the victims.  *Roy v. State*, 2006 OK CR 47, ¶ 45, 152 P.3d 217, 232; *DeRosa*, 2004 OK CR 19, ¶ 60, 89 P.3d at 1146.  However, [Petitioner] fails to show this error affected his substantial rights.  Thus, there is no plain error.

The remaining comments were based on the record evidence and reasonable inferences from it as well as the governing law. Hence, [Petitioner] fails to show an actual error which is plain or obvious which affected his substantial rights.  There is no plain error. Considered individually or cumulatively, [Petitioner] fails to show he was denied a fundamentally fair trial from the prosecutor's challenged comments.  Proposition I is denied.

*State v. Lockett*, F-2015-341, Okla. Crim. App. (Okla. Nov. 4, 2016) (Dkt. 12-3 at 4-6).

While the prosecutor's comments thanking the jury were improper, *Le* explains that "it is not enough that the prosecutor's remarks were undesirable or even universally condemned. Ultimately, this court considers the jury's ability to judge the evidence fairly in light of the prosecutor's conduct." *Le*, 311 F.3d at 1013 (internal citations and quotation omitted).  The Court again notes that Lockett's trial counsel did not object to any of the comments raised in Lockett's amended petition.  Moreover, the evidence, as recited above, is strong.  Finally, the jury was properly instructed, which mitigates error resulting from the prosecutor's comments

Based on the entire record, the Court finds ample support for the OCCA's conclusion that Lockett "fail[ed] to show he was denied a fundamentally fair trial from the prosecutor's challenged comments" (Dkt. 12-3 at 6).  Because the OCCA's conclusion was not "contrary to, [nor] involved

an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," the Court finds that the OCCA did not "unreasonably appl[y]" its plain error standard. 28 U.S.C. § 2254(d); *Thornburg*, 422 F.3d at 1124-25 (10th Cir. 2005).

Based on the foregoing, the Court concludes that Lockett's claim of prosecutorial misconduct for statements made on behalf of the victims, calling Lockett a liar, and suggesting other witnesses were available to testify does not merit habeas relief.

### C. Jigsaw Puzzle

Lockett's final claim of prosecutorial misconduct is that the prosecutor improperly used a jigsaw puzzle analogy that shocks the conscience, offends a sense of justice, and runs contrary to the decencies of civilized conduct (Dkt. 10 at 14). In voir dire, the prosecutor used a jigsaw puzzle to analogize missing pieces of evidence. The prosecutor, Mr. Grayless, stated:

> You construct [a] puzzle, and the puzzle appears to be complete except for right in the middle where you see from around the jungle a big hairy golden mane. You see a golden fur of a body. You see a big golden tail. He appears to be standing on a rock in a very manly jungle scene, but you don't have the snout. Could you try to make out what that is?

(Dkt. 13-5 at 108). Lockett argues, because he is an African American, "[t]he prosecutor's description of his puzzle depicts Petitioner as a jungle animal with a big tail and a snout is racist, which shocks the conscience of our justice system" (Dkt. 10 at 14). In support, Lockett cites *Rochin v. California*. 342 U.S. 165, 173 (1952) ("convictions cannot be brought about by methods that offend a sense of justice.").

Respondent argues that Lockett raised this issue on direct appeal, but rather than arguing the analogy should shock the Court's conscience, Lockett contended the analogy improperly lessened or defined the burden of proof (Dkt. 12 at 61, n. 10). Thus, Respondent argues, while

Lockett's new contention is unexhausted, the Court may nevertheless address the issue on the merits because it fails.

The OCCA reviewed this claim and held

> The balance of challenged voir dire questions were an attempt by the prosecutor to determine potential biases by the panelists based on issues which would arise in the case.  This was permissible. *Robinson v. State*, 2011 OK CR 15, ¶ 16, 255 P.3d 425, 431-32.  Jurors are presumed to follow their instructions, *Blueford v. Arkansas*, _U.S. _, 132 S. Ct. 2044, 2051, 182 L. Ed. 2d 937 (2012), and [Petitioner] fails to overcome that presumption here.  The prosecutor's voir dire questions did not contradict the instructions given by the trial court concerning the burden of proof or the factors which jurors may consider in evaluating the weight and credibility of testimony.  Under the total circumstances, the record does not reveal plain or obvious error which affected [Petitioner's] substantial rights. *See Dodd v. State*, 2004 OK CR 31, ¶ 24, 100 P.3d 1017, 1029.  Thus, there is no plain error and relief is unwarranted for this aspect of his claim.

*State v. Lockett*, F-2015-341, Okla. Crim. App. (Okla. Nov. 4, 2016) (Dkt. 12-1 at 4).

Jigsaw puzzle analogies are not new.  Both state and federal courts have addressed this issue.[5]  In *United States v. Bradley*, the Sixth Circuit found on direct appeal that "[t]he use of this metaphor for the beyond-a-reasonable-doubt standard was . . . improper."  917 F.3d 493, 508 (6th Cir. 2019).  However, the Court held its use "was not flagrant misconduct requiring reversal under the plain-error standard."  *Id*.  The Court reasoned that (1) the government did not intentionally seek to mislead the jury, (2) the government used the analogy in one isolated incident, (3) the

---

[5] *State v. Crawford*, 334 P.3d 311 (Kan. 2014) (The state showed beyond a reasonable doubt that the jury's verdict at a trial for aggravated kidnapping and other offenses was not affected by prosecutor's gross and flagrant misconduct in misstating the law, through the use of a jigsaw-puzzle analogy during voir dire and closing arguments, about the state's burden of proof, and thus the misconduct did not require reversal, even though the evidence against defendant was not overwhelming; evidence that victim had defendant's DNA under her fingernails after she was found with a bloodied lip was so compelling that the misconduct would have had little weight in the minds of the jurors.); *Gonzales v. Graham*, No. 9:17-CV-01321-JKS, 2020 WL 7397529, at *10 (N.D.N.Y. Dec. 17, 2020) ("Gonzales complains that the prosecutor referred to the analogy of a partially-completed jigsaw puzzle. But an independent review of the record reflects that the prosecutor's reference to the jigsaw puzzle was a fair response to defense counsel's use of a jigsaw puzzle metaphor to argue that there were significant gaps in the People's evidence."); *United States v. Swanson*, 703 F. App'x 487, 489 (9th Cir. 2017) ("The prosecution's use of a jigsaw puzzle analogy during closing argument did not misstate the burden of proof, and the district court did not plainly err by failing to *sua sponte* strike the prosecutor's closing argument or find prosecutorial misconduct.").
!

evidence demonstrated the defendant's guilt, (4) the defendant failed to timely object to the analogy, and (5) any error was countered by the trial court's instructions on the burden of proof. *Id*.

The instant case possesses all the factors set forth in *Bradley*. The alleged incident occurred during voir dire and was an attempt by the prosecutor to show that every piece of evidence may not be presented (Dkt. 13-5 at 107-13). In this instance, the prosecutor was telling the jury they would not hear from the victim who was dead, "so you're always going to have one or two pieces" of the puzzle missing (Dkt. 13-5 at 110). Further, the government did not use the analogy outside of voir dire; the evidence presented at trial demonstrated Lockett's guilt; Lockett did not object to the analogy during voir dire; the analogy was not used to lessen the burden of proof; and both the prosecution and court instructed the jury of the requirement to prove the case beyond a reasonable doubt. Moreover, the puzzle analogy did not depict Lockett as a jungle animal. And even if the analogy was improper,[6] the Court considers "the context of the fairness of the trial as a whole." *Bradley*, 917 F.3d at 493, 508.

Based on the entire record, the Court finds ample support for the OCCA's conclusion that Lockett "fail[ed] to show he was denied a fundamentally fair trial from the prosecutor's challenged comments (Dkt. 12-3 at 6). Because the OCCA's conclusion was not "contrary to, [nor] involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States", the Court finds that the OCCA did not "unreasonably appl[y]" its plain error standard. 28 U.S.C. § 2254(d); *Thornburg*, 422 F.3d at 1124-25.

---

[6] The majority of cases involving the jigsaw puzzle analogy refer to innocuous objects, such as Mount Rushmore (*State v. Wilbon*, 561 S.W.2d 133 (Mo. Ct. App. 1978)), the Space Needle in Seattle (*Post v. Glebe*, No. C15-5364 BHS-KLS, 2016 WL 11384035, at *2 (W.D. Wash. Aug. 5, 2016), *report and recommendation adopted*, No. C15-5364BHS, 2016 WL 5349409 (W.D. Wash. Sept. 26, 2016), the Statue of Liberty (*Moyer v. Johnson*, No. 2:12-CV-01170-JKS, 2014 WL 4098499, at *17 (E.D. Cal. Aug. 18, 2014)), the Golden Gate Bridge (*Taylor v. Muniz*, No. 2:13-CV-01826-JKS, 2015 WL 4645299, at *18 (E.D. Cal. Aug. 4, 2015)), etc.

Based on the foregoing, the Court concludes that Lockett's claims of prosecutorial misconduct, voir dire hypotheticals, and use of a jigsaw puzzle analogy do not merit habeas relief. Furthermore, because Lockett has not shown prejudice from these remarks, and the Court finds none, the Court also finds Lockett's claim of ineffective assistance of trial counsel for failing to object does not merit habeas relief.

## III.    CERTIFICATE OF APPEALABILITY

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When the district court rejects the merits of petitioner's constitutional claims, he must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Because Lockett has not made the requisite showing on any of his claims to be entitled to a certificate of appealability, the Court denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.  The Petition for Writ of Habeas Corpus (Dkt. 1) is DECLARED MOOT.

2.  The Amended Petition for Writ of Habeas Corpus (Dkt. 10) is DENIED.

3.  A certificate of appealability is DENIED.

4.  A separate judgment shall be entered in this matter.

DATED this 31st day of March 2022.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE